# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### ABERDEEN DIVISION

**SHERRY RICHARDSON, proceeding on behalf of**
**Michael Shane Richardson,**                      **PETITIONER**

**vs.**                        **CIVIL ACTION NO.: 1:13CV44-SA-JMV**

**CHRISTOPHER EPPS, et al.,**                  **RESPONDENTS**

## MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 2254, Petitioner Sherry Richardson is challenging Michael Shane Richardson's ("Richardson") State court convictions for capital murder and the possession of a firearm by a convicted felon.[1] Having considered the submission of the parties, the State court record, and the applicable law, the Court finds that the petition should be denied.

### Background Facts and Procedural History

In September 2006, Richardson lived near Harvey Evans and Evans' girlfriend, Sherrie Halverson, in Columbus, Mississippi. Richardson was friendly with the couple, and Evans had occasionally provided Richardson with transportation and financial assistance. On September 19, 2006, Richardson went to the couple's home and Halverson let Richardson inside the home. Halverson then left the room, leaving Richardson and Evans alone. Later, Halverson heard Evans "hollering" and ran into the room to find Evans lying on the floor, Richardson standing over him, and a baseball bat rolling on the floor. Richardson ran. Evans told Halverson that

---

[1] The petition was prepared by Richardson's mother and signed by Richardson. (ECF No. 1, 14). Sherry Richardson was granted "next-friend" status in this case by order filed March 20, 2014. (ECF No. 19).

Richardson had hit him in the head with the bat. Evans' two wallets were missing, as was all of his cash. Evans was hospitalized for his injuries and died on January 4, 2007, from injuries related to the September attack.

After attacking Evans, Richardson went to Beverly Gurley's home and purchased cocaine. He shared the drug with others, including Beverly's brother, Arthur Price, who testified that Richardson admitted to Price that he had robbed a man and taken his money. Price testified that Richardson paid for all of the drugs they consumed that evening.

Later the same evening, Richardson went to Barbara Tenney's home, and Richardson, Tenney, and Sarah Gibson traveled to Alabama with the intention of visiting one of Tenney's friends. Gibson testified that she and Richardson smoked crack cocaine on the way back to Mississippi, and that Richardson told her that he had "done something bad[.]" When they returned to Mississippi, Gibson and Richardson smoked crack cocaine again before going to an apartment complex, where Richardson purchased two guns. Gibson and Richardson went to a Super 8 motel, where they were joined by McKenzie Barham. The three smoked more crack cocaine.

Gibson left the motel, and shortly thereafter, Barham and Richardson left the motel, as well. Barham and Richardson returned to Beverly Gurley's house. They stopped at a convenience store along the way, and Barham testified that Richardson gave her a $100 bill to pay for gasoline and cigarettes. Barham testified that Richardson had two guns in his possession when they arrived at the home, but she stated that he threw one of the guns in Gurley's backyard. Barham stated that Richardson paid for the drugs she used the evening of September 19, 2006.

On September 20, 2006, Richardson called 911 and turned himself in to law enforcement.

Officer Terry Gentry of the Columbus Police Department arrived first, followed by Investigator Terry Cooper of the Lowndes County Sheriff's Department. Investigator Cooper testified that Richardson asked about Evans' condition and "kept apologizing and wanted to know how Harvey was." Richardson was transported to the Lowndes County Sheriff's Department, where he was read his *Miranda* rights[2] and signed a waiver of rights form. Richardson provided a statement in which he admitted that he attacked Evans, stole his money, and used the money to purchase drugs and guns. He maintained that a man named Kenny Jones knew beforehand that Richardson planned to attack Evans and take his money, and that Jones was supposed to meet Richardson after the robbery and distribute the money to others. Richardson concluded his statement to police by asserting: "I didn't know I had hurt Harvey as bad as I did." Law enforcement officers located the guns where Richardson stated they would be found and began making other arrests in the case. Investigator Cooper testified that he received letters from Richardson while Richardson was in prison in which Richardson acknowledged that he had attacked Evans.

At trial, Richardson attempted to show that Kenny Jones planned the crime. Barbara Tenney, who dated Jones at the time of the attack, testified that she saw Jones with several hundred dollars on the day of the attack. However, she also testified that, on the ride to Alabama on September 16, Richardson stated that he needed new clothes because he had blood on his pants. She also testified that Richardson stated he hoped Evans did not die, because "[h]is eyes rolled back in his head when I hit him." Richardson also testified, admitting that he attacked

---

[2] The Court uses the term "*Miranda* rights" to refer to the well-known warnings, such as the right to remain silent and the right to the presence of an attorney, that must accompany a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966).

Evans with a bat and took his wallets. He also admitted to purchasing the guns.

Richardson was convicted of capital murder (Count I) and being a felon in possession of a weapon (Count II) in the Circuit Court of Lowndes County, Mississippi. Following a sentencing hearing, he was sentenced to life without parole on Count 1 and a consecutive term of ten years on Count 2. He appealed his convictions and sentences to the Mississippi Supreme Court, which affirmed the trial court. *See Richardson v. State*, 74 So. 3d 317 (Miss. 2011), *reh'g denied*, December 1, 2011 (Cause No. 2010-KA-00511-SCT). He did not file a petition for post-conviction relief in the trial court pursuant to Mississippi's post-conviction relief statutes. *See* Miss. Code Ann. § 99-39-1, *et seq.* Richardson filed the instant petition on or about February 26, 2013, raising the following grounds, as paraphrased by the Court:

Ground One:    Error in refusing to suppress statement.
Ground Two:    Error in refusing to sever counts.
Ground Three:  Error in denying motion to exclude evidence of other crimes.
Ground Four:    Error in admitting photos of the victim's brain.

**Legal Standard**

The Court's review of the claims raised in the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), because the petition was filed after the statute's effective date. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA prevents the grant of federal habeas relief on any claim adjudicated on the merits in state court unless that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established United States Supreme Court precedent; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the presented evidence. *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

A state court's decision is "contrary to" Supreme Court law if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The "unreasonable application" clause is reserved for decisions that either fail to identify the correct governing law, or identify the correct governing law but misapply it to the case. *Id.* at 407. Under these standards, a state court's decision will not warrant federal habeas relief unless its application of federal law is both incorrect and unreasonable. *Garcia v. Dretke*, 388 F.3d 496, 500 (5th Cir. 2004). A reviewing habeas court considers only the state court's conclusion when determining whether there has been an unreasonable application of federal law and not the court's reasoning in reaching the decision. *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).

### Discussion

As a preliminary matter, the Court notes that Petitioner raises an allegation in this petition that was not initially presented to the Court as a distinct ground for federal habeas relief. Petitioner alleges that the Assistant District Attorney who prosecuted Richardson "is related to Kenneth Jones (Mastermind) who used [Richardson] because he's mentally ill." (ECF No. 1, 11). Petitioner also maintains that there is "new evidence to present," but does not identify what the new evidence is. (*Id.* at 7, 9, 10, 12). In response to a question on the § 2254 form asking if there is any ground in the petition that has not been previously presented to a state or federal court, Petitioner states that she wants to have Richardson's sentences vacated and for him to be found not competent to be retried for the crimes. (*Id.* at 12).

A petitioner seeking federal habeas relief under § 2254 must generally exhaust all claims in state court prior to filing a petition for federal habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A). This requirement is satisfied when a petitioner has fairly presented his claims to the highest court of the state. *Morris v. Dretke*, 379 F.3d 199, 204 (5th Cir. 2004). If a petitioner fails to exhaust his claims prior to seeking federal habeas relief, a federal district court must ordinarily dismiss the "'mixed petition[],' leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

After an initial review of the petition and the Respondents' answer, the Court determined that not all of the claims raised in the instant petition were exhausted. By order entered August 15, 2013, the Court required Richardson to either amend his petition to delete any unexhausted claims or to clarify why all of his claims are proper for federal habeas review. (ECF No. 10). Richardson was cautioned that his failure to abide by the Court's order could result in the dismissal of his petition. (*Id.*). Richardson moved for additional time and requested that his mother be allowed to file motions and pleadings on his behalf. (ECF No. 13). The Court granted Richardson's motion for additional time but instructed Richardson that he was required to sign any motions submitted to the Court. (ECF No. 14). The Court extended the deadline for Richardson's response to October 21, 2013. (*Id.*). Richardson failed to file a response either amending or clarifying his petition.

On November 12, 2013, the Court, *sua sponte*, entered an order staying this action to allow Richardson an opportunity to return to State court and fully exhaust any unexhausted claims in his federal habeas petition. (ECF No. 16). It ordered Richardson to initiate State court

6

proceedings, if any, within forty-five days of the November order. (*Id.*). On February 11, 2014, Respondents moved to lift the stay, arguing that Richardson failed to file for relief in State court. (ECF No. 18). Just days earlier, however, Petitioner filed a notice asking the Court to forward her correspondence in Richardson's case, attaching a recently obtained power of attorney in support of her request. (ECF No. 17). The Court construed the notice as a motion to proceed on Richardson's behalf and entered an order, *sua sponte*, acknowledging Petitioner's allegations that Richardson is unable to pursue the action on his own behalf and ordering that she be allowed to proceed on his behalf. (*See* ECF No. 19). The Court ordered that Petitioner be forwarded relevant copies and ordered that Petitioner respond to Respondents' order to lift the stay and/or the Court's order staying the case within twenty days. (*Id.*). After she was granted several extensions of time, Petitioner filed a response to the motion to lift the stay on June 13, 2014. (ECF No. 28). In her response, Petitioner makes it clear that she is pursuing a claim that the Assistant District Attorney prosecuted Richardson while under a conflict of interest. (*Id.*). On June 19, 2014, Respondents submitted a reply asserting that Petitioner failed to initiate proceedings in State court and asking this Court to lift the stay and consider only the exhausted claims raised in the petition. (ECF No. 29). On June 24, 2014, the Court granted Respondents' motion to lift the stay, withholding judgment as to whether Petitioner's conflict of interest claim would be considered on its merits. (ECF No. 30).

The Court finds that, to the extent that the Petitioner attempts to assert a claims that Richardson's conviction should be vacated because his prosecutor had a conflict, this claim has not been independently presented to the Mississippi Supreme Court and is unexhausted. *See* Miss. Code Ann. § 99-39-5(1) (providing avenue for inmate to bring a challenge "[t]hat the

conviction or the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of Mississippi").

Petitioner appears to argue that Richardson has not first presented these claims in State court because the Inmate Legal Assistance Program (ILAP) at the Mississippi Department of Corrections refuses to assist him. (ECF no. 1, 13). According to the 2009 affidavit of Gina McLeod, Director of ILAP, legal services are provided to inmates upon their request. (*See* Respts' Answer, Ex. B). These services do not include, however, assistance in the preparation of legal documents "except upon written authorization from the Commissioner or designee." *(Id.*, Ex C at p.5). Therefore, the Court finds that Petitioner's allegation that ILAP is unhelpful is insufficient to excuse the failure to fully exhaust all of Richardson's claims.

The Court finds Petitioner's claim of prosecutorial conflict, to the extent it is intended as an independent ground for relief, is unexhausted. However, because the Court is hesitant to construe the instant petition as a "mixed" petition subject to dismissal, it will consider the four exhausted claims specifically listed in the petition as grounds for relief.

**Ground One: Error to Refuse to Suppress Statement**

Petitioner maintains that the trial court erred in denying Richardson's motion to suppress his statements to law enforcement. Petitioner alleges that Richardson requested legal assistance after turning himself into police but before making a statement, but that officers failed to cease their interrogation efforts. Petitioner argues that this failure, combined with Richardson's mental illness and low intelligence, render his waiver of his *Miranda* rights involuntary.

A hearing was held on Richardson's motion prior to trial, and Richardson testified at the hearing that he requested to speak to his mother or a legal assistant after turning himself into

police but before making a statement.  (SCR vol. 3, 103-106).[3]  Richardson testified that he

called police on September 20, 2006, and asked to be taken into custody.  (*Id.* at 105).

Investigator Cooper placed him under arrest, and Richardson stated that he told Cooper that he

needed to speak with his mother or legal assistant.  (*Id.* at 106).  Richardson reported that the

investigator told him it would be handled at the detention center.  (*Id.* at 107).   Richardson

maintained that he again asked to speak to his mother or a legal assistant at the detention center,

but the investigator "rushed out" and another detective, Greg Wright, started questioning him.

(*Id.* at 109).  He maintained that he requested assistance twice more, including once when

Investigator Cooper returned to the room, but that the investigator ignored his request and

"insisted" that Richardson make a statement.  (*Id.* at 109, 115-16).

      Both investigator Tony Cooper and Chief Deputy Greg Wright denied that Richardson

ever asked for any type of legal assistance.  (*Id.* at 138, SCR vol. 4, 165).  A waiver of rights

form signed by Richardson was admitted as Exhibit S-1 to the hearing.  (SCR vol. 3, 138).

Richardson's statement to the police officers was admitted as Exhibit S-2 to the hearing.  (*Id.* at

146).  That statement contained Richardson's admission that he hit Evans in the head with a

baseball bat and robbed him of his money.  (*Id.* at 145).  While incarcerated, Richardson wrote

letters to Investigator Cooper discussing Richardson's involvement in the crime.  These letters

were admitted as Exhibits S-3 and S-4 to the hearing.  (*Id.* at 148, SCR vol. 4, 151).  In one

letter, Richardson stated "I'd also like to mention about my case now that I had — that I had

thought up and kind of planned to get the money from Harvey[.]" (SCR vol. 3, 149).

---

[3]  There are eight consecutively numbered volumes in the State court record, the first two
of which contain the State court papers.  The Court retains the use of "SCR vol. __, __" to
pinpoint citations in the record.

The trial court found "that the defendant did not invoke his right to counsel. That he knowingly, voluntarily, and intelligently waived his right to counsel. And the Court makes its finding beyond a reasonable doubt. He was informed of his *Miranda* rights. And gave knowingly, voluntarily, and intelligently given statements." (SCR vol. 4, 268). The court found that Richardson's custodial statement was not made in violation of the Constitution and entered a written order to that effect. (*See id.*; SCR vol. 1, 134).

On direct appeal, the Mississippi Supreme Court noted that conflicting testimony was given to the trial court regarding the voluntariness of Richardson's statements, but that in light of all of the record evidence, the trial court did not abuse its discretion in denying Richardson's motion to suppress. *Richardson*, 74 So. 3d at 323.

"A defendant's waiver of his *Miranda* rights must be knowing and intelligent, and it must be voluntary, discrete inquiries that look to the totality of the circumstances." *James v. Cain*, 468 F. App'x 401, 402 (5th Cir. 2012) (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). The Fourteenth Amendment requires that a confession must be voluntarily given to be admissible against a criminal defendant. *Sims v. Georgia*, 385 U.S. 538, 543-44 (1967). The question of voluntariness is a consideration of "whether a defendant's will was overborne by the circumstances surrounding the giving of a confession. The due process test takes into consideration the totality of all the surrounding circumstances - both the characteristics of the accused and the details of the interrogation." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citation and internal quotation marks omitted). These circumstances may include "the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental health." *Withrow v. Williams*, 507 U.S. 680, 693 (1993) (internal

citations omitted).  While "a defendant's mental condition" is relevant to the inquiry, it is not

dispositive, as "coercive police activity" is required to find a confession involuntary under the

Fourteenth Amendment.  *Colorado v. Connelly*, 479 U.S. 157, 164, 167 (1986).

Richardson has a documented history of psychiatric treatment, and he received several

psychological evaluations prior to trial in order to assess his competency to stand trial.  During

three of the evaluations, it was noted that Richardson appeared to be malingering or exaggerating

symptoms of mental illness  (*See, e.g.,* SCR vol. 1, 34; 61; 117).[4]  The forensic staff of the

Mississippi State Hospital rendered the "unanimous opinion that Mr. Richardson has at the

present time, and had at the time of his reported statement to law enforcement on 20 September

2006, the capacity to understand and knowingly, intelligently, and voluntarily to waive or assert

his constitutional rights."  (SCR vol. 1, 36).

At the suppression hearing, Richardson testified that he told both Deputy Wright and

Investigator Cooper that he wanted legal assistance, but that they insisted he make a statement

without providing him with the opportunity to receive assistance.  (SCR vol. 3, 112-15).  He

admitted that he was read his rights when he was arrested, but Richardson invoked the Fifth

Amendment right against self-incrimination when asked why he signed the waiver of rights form

---

[4]  During a pre-trial hearing, Dr. Reb McMichael, Chief of Forensic Services at the
Mississippi State Hospital, testified that Richardson's medical records stated that, as a result of
his drug abuse, Richardson has inhalant-induced psychotic disorder and possible inhalant-
induced dementia.  (SCR vol. 3, 35).  To treat his illnesses, Richardson was prescribed mood-
stabilizing medication and a sedating agent, with which he was at sometimes noncompliant.
(*See, e.g., id.* at 37-39).  Eventually, the trial court ordered Richardson admitted to the State
Hospital for treatment until trial in order to ensure his compliance with his medications.  (*See*
SCR vol. 1, 116-17; SCR vol. 3, 81, 83-84).  He was found competent to stand trial.  (SCR vol.
4, 271).  He was also found to be functioning in the "high borderline to low average range of
intellectual ability." (SCR vol. 1, 63).

or why he did not phone his mother from the gas station before he called 911 to turn himself into

the authorities. (*See id.* at 123-24, 130). When he was asked what words the officers used to

convince him to give a statement, Richardson replied:

> I - - I really can't answer that question. It's just I - - I - - I've repeatedly asked them to
> use the phone, and to talk to my mother and the legal - - you know, to get the legal
> preference of the - - and it - - it wasn't - - it didn't - - and it was going on into the next
> room, there was other things said about the lawyer, whatever you said here it could be
> changed. There was a lot of things. . . . That's what they said.

(SCR vol. 3, 127).

Investigator Cooper testified that Richardson never requested to speak to anyone, and

that once Richardson was brought to the Sheriff's Department, Investigator Cooper personally

went over Richardson's rights with him using a standard form. (*See* SCR vol. 3, 138-143). He

maintained that he asked whether Richardson had any questions before he gave Richardson a pen

to sign the waiver, and that Richardson never indicated that he had questions, wanted to talk to a

lawyer, or that he did not want to speak with Investigator Cooper. (*Id.* at 141-44). Similarly,

Deputy Wright testified that he only spoke briefly with Richardson at the Sheriff's Department,

but that Richardson never requested legal assistance. (SCR vol. 4, 165). Deputy Wright denied

that he insisted that Richardson give a statement, and he denied that Richardson was promised

anything if he gave a statement. (SCR vol. 4, 166). Both law enforcement officers indicated that

Richardson was remorseful and worried about Evans at the time he gave a statement to them.

(SCR vol. 3, 140; SCR vol. 4, 166).

In light of the evidence before the trial court, it is not unreasonable to conclude that

Richardson did not attempt to invoke his right to counsel prior to or during his statement to law

enforcement officials. There is also sufficient evidence in the record to reach a determination

that Richardson was read his rights, that he understood his rights, that he waived his rights, and that the waiver was uncoerced. It is not unreasonable to conclude that, under the totality of the circumstances, Richardson's waiver of his *Miranda* rights and subsequent confession were knowingly, intelligently, and voluntarily given. Relief on this claim is denied.

**Ground Two: Error in refusing to sever counts.**

Petitioner argues that the trial court erred in refusing to sever Richardson's counts. At trial, evidence of Richardson's prior felony conviction was introduced to establish that he had previously been convicted of a felony at the time he purchased firearms on September 19, 2006. Richardson filed a motion asking the trial court to sever his possession of firearms charge from his capital murder charge, arguing that the guns were purchased after the murder and had no connection to the murder itself. (SCR vol. 1, 75; SCR vol. 4, 176). The trial judge held a hearing on the motion and refused to sever the counts after considering the factors as set forth in *Corley v. State*, 584 So. 2d 769 (Miss. 1991) regarding multi-count indictments. (SCR vol. 4, 175-82).

As the Mississippi Supreme Court noted in its decision adjudicating Richardson's appeal, the *Corley* standard requires the State to make "a prima facie showing that the offense charged fall[s] within the language of the statute allowing multi-count indictments. If the State meets its burden, a defendant may rebut by showing that the offenses were separate and distinct acts or transactions." *Richardson*, 74 So. 3d at 324. It further noted that a consideration of whether a multi-count indictment is proper requires the trial court to consider the following factors: (1) the time period between the offenses; (2) whether the evidence proving each count would be admissible to prove each of the other counts; and (3) whether the crimes are interwoven. *Id.*

(citations omitted).

Pursuant to Mississippi law, two or more offenses may be charged in a single indictment if "(a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." Miss. Code Ann. § 99-7-2(1). In *Corley v. State*, 584 So. 2d 769 (Miss. 1991), the Mississippi Supreme Court determinted that when a trial court makes its severance determination, it "should pay particular attention to whether the time period between the occurrences is insignificant, whether the evidence proving each count would be admissible to prove each of the other counts, and whether the crimes are interwoven." *Id.* at 772 (footnote omitted).

In Richardson's case, the trial court found that the time between the offenses was insignificant, as the offenses occurred within the same twenty-four hour period. (SCR vol. 4, 1980). The Mississippi Supreme Court agreed, noting that the guns were purchased the same afternoon that Richardson robbed Evans. *Richardson*, 74 So. 3d at 325. The trial judge found that the capital murder offense and the firearm offense would involve some different witnesses, but the trial judge noted that if the defense wished to stipulate to Richardson's prior felony offense, the State would be bound by the stipulation. (SCR vol. 4, 181). Counsel did not stipulate the prior felony offense. The Mississippi Supreme Court failed to find that the trial court abused its discretion in refusing to sever the counts, noting that while different witnesses for the two crimes would be required in some instances, both Investigator Cooper and Sarah Gibson testified regarding both counts. *Richardson*, 74 So. 3d at 325-27. The court also noted that "Richardson's counsel did not request a limiting instruction, nor did Richardson's counsel

offer to stipulate that Richardson had a previous felony conviction.  Also, defense counsel did

not object at trial to evidence of Richardson's previous conviction."  *Id.*  It also noted that the

trial court instructed the jury to consider that the two counts were separate offenses to be

considered independently.  *Id.*

As to the third factor, the trial judge found that the crimes could be interwoven to show

motive, inasmuch as Richardson used the money from the robbery to buy drugs and guns.  (SCR

vol. 4, 181).  The Mississippi Supreme Court agreed, finding:

> Richardson's charges have a "common thread" — the money stolen from Evans.
> The underlying felony in Richardson's murder charge is robbery.  After
> Richardson hit Evans on the head with a baseball bat, he stole Evans's wallet,
> which contained a large amount of cash.  Shortly thereafter, Richardson used the
> money he had stolen from Evans, among other things, to purchase two guns.
> Based on this connection, we find that the trial court did not abuse its discretion in
> finding that Richardson's two charges were interwoven.

*Richardson*, 74 So. 3d at 327-28.  The Mississippi Supreme Court agreed that, based on the

*Corley* factors, severance was not required in this case, but it also found any possible resulting

error harmless, inasmuch as Richardson confessed to both crimes and eyewitness testimony was

given that he purchased handguns on the day of the murder.  *Id.* at 328-29.

The Court notes that Richardson's federal habeas claim that the counts in his indictment

should have been severed does not raise a constitutional issue unless the error in the evidentiary

ruling "so infused the trial with unfairness as to deny due process of law."  *Lisenba v. California*,

314 U.S. 219, 228 (1941); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[E]rrors of state

law, including evidentiary errors, are not cognizable in habeas corpus as such.").  The reasons set

forth by the trial court and the Mississippi Supreme Court have record support.  However, for the

reasons state above, even if Richardson's crimes failed to satisfy the *Corley* factors, he suffered

no prejudice from the trial of the charges together and was not denied a fair trial. Habeas relief on this claim is denied.

**Ground Three: Error in denying motion to exclude evidence of other crimes.**

Petitioner argues that it was error for the trial court to deny Richardson's motion to exclude evidence of his other crimes. Prior to trial, Richardson moved to exclude evidence that he was previously convicted for aggravated assault, that he bought guns with the proceeds of the robbery, and that he purchased and used cocaine with various individuals after the robbery. The motion was denied after a hearing. The trial judge found the evidence relevant to prove motive, and that the probative value was not substantially outweighed by the danger of unfair prejudice. (SCR vol. 4, 182-87; SCR vol. 1, 128).

Richardson argued on appeal that it was error to deny the motion to exclude evidence of Richardson's other crimes, and the Mississippi Supreme Court noted that Richardson's attorney did not object to the "other crimes" evidence or request a limiting instruction. *Richardson*, 74 So. 3d at 330-31. It otherwise noted that "[b]ecause evidence of Richardson's other crimes showed his pecuniary motive for murdering Evans, . . . the trial court did not abuse its discretion in admitting evidence of these other crimes. Further, in light of the overwhelming weight of the evidence of Richardson's guilt, we find that any unfair prejudice resulting from the admission of other-crimes evidence was harmless and does not require reversal.*" Id.*

Petitioner's claim is grounded in State evidentiary law, and as a habeas court, this Court's review is limited to a determination of whether the trial court committed an evidentiary error "so extreme that it constituted denial of fundamental fairness" under the Due Process Clause. *Andrade v. McCotter*, 805 F.2d 1190, 1193 (5th Cir. 1986) (citation omitted); *see also Estelle v.*

*McGuire*, 502 U.S. at 67-68.  In this case, the evidence that Richardson bought cocaine and guns

after he attacked and robbed Evans showed his pecuniary motive for the crime.  The admission

of this evidence was not an error that denied Richardson a fundamentally fair trial.  Moreover, as

noted by the appellate court, no prejudice resulted to Richardson in light of the overwhelming

evidence of his guilt.  Accordingly, federal habeas relief is denied as to this claim.

**Ground Four:  Error in admitting photos of the victim's brain.**

Petitioner maintains that the trial court erred in allowing into evidence a photograph of

the victim's brain, which was introduced over defense counsel's objection during the testimony

of pathologist, Dr. Steven Hayne.  (SCR vol. 7, 681-82).  Petitioner concedes that the trial judge

had the State redact part of the picture but maintains that the photograph was not probative

evidence, as defense did not contest the cause of death.

The redacted photograph of the victim's brain was introduced through the testimony of

Dr. Hayne, the forensic pathologist who conducted the autopsy of the victim.  (SCR vol. 7, 680).

He testified that the autopsy showed that the victim received a surgical incision prior to his death

in an effort to treat his injuries, and that there was "evidence of significant injury to the brain."

(*Id*. at 681).  The trial court allowed the photograph as relevant to explain the age of the wound.

(*Id*. at 683).

On appeal, the Mississippi Supreme Court noted that defense counsel objected to the

photograph, and that the trial court only found the photograph admissible after performing a

balancing test.  *Richardson*, 74 So. 3d at 332.  The court found:

> [T]he trial court found the photograph was relevant because Evans had died
> approximately three and one half months after being hit in the head, and the
> photograph had helped to establish the age of Evans's brain injury.  The
> photograph was used to supplement Dr. Hayne's testimony regarding the injury to

> Evans's brain. Dr. Hayne referred to the photograph while testifying that Evans's brain injury had occurred months prior to his actual death. The photograph showed a brown discoloration on the brain, which Dr. Hayne testified forms four to five days after the actual injury and lasts for years after the injury.

*Id.* Finding no abuse of discretion in the trial court's admission of the photograph of Evans' brain, the court held the issue without merit. *Id.*

Richardson's challenge is to a State court evidentiary ruling, thereby limiting this Court's determination to whether the trial court committed an evidentiary error "so extreme that it constituted a denial of fundamental fairness" under the Due Process Clause. *Andrade*, 805 F.2d at 1193; *see also Estelle*, 502 U.S. at 67-68. The Court concludes that no such extreme error occurred in this case. The trial judge performed a balancing test and determined that the evidence was more probative than prejudicial, and the introduction of the photograph was not as devastating as Richardson's own admission of guilt. Habeas relief as to this issue is denied.

### Certificate of Appealability

Petitioner must obtain a certificate of appealability ("COA") before appealing this Court's decision denying federal habeas relief. 28 U.S.C. § 2253(c)(1). A COA will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right" of any claim rejected on its merits, which a petitioner may do by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a petitioner must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Applying this standard, the Court concludes that a COA should be denied in this case.

**Conclusion**

The Mississippi Supreme Court's decision in this case was neither contrary to, nor did it involve an unreasonable application of clearly established federal law. The decision was not based on an unreasonable determination of the facts in light of the evidence. Accordingly, it is hereby ordered that the instant petition for a writ of habeas corpus is **DENIED** and this action **DISMISSED WITH PREJUDICE**. A certificate of appealability is **DENIED**. A judgment in accordance with this opinion and order will issue this day.

**SO ORDERED, THIS** the 1st day of August, 2014.

 /s/ Sharion Aycock
**U.S. DISTRICT JUDGE**